**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JENNIFER BRISCOE, Guardian of the Minor Child K.B., <br><br>       Plaintiff, <br><br>    v. <br><br> DISTRICT OF COLUMBIA, <br><br>       Defendant. | Civil Action No. 22-3365 (CKK) |

**MEMORANDUM OPINION**
(March 31, 2024)

On behalf of the minor child K.B., and pursuant to the Individuals with Disabilities Education Act ("IDEA"), Plaintiff Jennifer Briscoe ("Plaintiff"), filed this action against the District of Columbia (the "District") to challenge an August 29, 2022 Hearing Officer's Determination ("HOD") that dismissed her administrative due process claim filed against the District of Columbia Public Schools ("DCPS"). In that HOD, the Independent Hearing Officer ("IHO") concluded that: (1) DCPS timely provided Plaintiff with an authorization for her requested independent educational evaluation ("IEE"); (2) Plaintiff failed to demonstrate that DCPS's December 2020 reevaluation of K.B. was inadequate; and (3) DCPS committed a procedural violation related to the provision of K.B.'s educational records that did not amount to a substantive denial of free appropriate public education ("FAPE"). *See* August 29, 2022 HOD, ECF No. 13-1, at 4-24. DCPS was directed, however, to provide a list of student documents that are maintained in the Special Education Database ("SEDS"). *Id.* at 17.

The parties have filed cross motions for summary judgment regarding that August 29, 2022 HOD. In her Points and Authorities in support of her Motion for Summary Judgment, Plaintiff claims that: (1) DCPS unnecessarily delayed its response to Plaintiff's request for an

IEE; (2) DCPS refused to authorize a sufficient IEE, which led to a substantive violation of the IDEA; (3) DCPS failed to prove the 2020-2021 reevaluation was appropriate; (4) the IHO erred in finding that DCPS's failure to provide a "SEDS Document Index" was not a substantive denial of FAPE; and (5) DCPS has not complied with the IHO's Order to provide the "SEDS Document Index." *See generally* Pl.'s P&A, ECF No. 15-1.   Those five arguments will be addressed herein.

In response thereto, the District asserts that Plaintiff has neither established a denial of FAPE nor that the IHO erred in his decision, which is "entitled to deference because it is supported by substantial evidence and is in accordance with law." Defendant's Cross Motion for Summary Judgment, ECF No. 16, at 4.  Furthermore, the District contends that "DCPS complied with the HOD's remedial order." *Id.*  Upon review of the two motions for summary judgment and the record herein, for the reasons set forth in detail in this Memorandum Opinion, the Court finds that Plaintiff's [15] Motion for Summary Judgment shall be DENIED and Defendant's [16] Cross Motion for Summary Judgment shall be GRANTED.[1]  A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. Statutory Framework

The IDEA was enacted to "ensure that all children with disabilities have available to them

---

[1] In connection with this Memorandum Opinion, the Court considered: (1) the Administrative Record ("AR"), ECF No. 13-1 [indexed at ECF No. 13]; (2) Plaintiff's' [15]  Motion for Summary Judgment ("Pl.'s MSJ"), Plaintiff's [15-1] Points and Authorities in support thereof ("Pl.'s P & A"), and the exhibit attached thereto; (3) Defendant's [16] [consolidated] Opposition to the Motion for Summary Judgment and Cross Motion for Summary Judgment ("Def.'s CMSJ"); (4) Plaintiff's [20] [consolidated] Opposition to Defendant's Cross Motion and Reply in support of Motion ("Pl.'s Reply"); and (5) Defendant's [22] Reply in support of Cross Motion ("Def.'s Reply").   In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *M.G. v. District of Columbia*, 246 F. Supp. 3d 1, 7 (D.D.C. 2017) (citing 20 U.S.C. § 1400(d)(1)(A))*, see also Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). Once a child is identified as disabled, the school district must convene a meeting of a multi-disciplinary team to develop an individualized education program ("IEP") for the student. *See* 20 U.S.C. § 1414 (d)(2)(A). The IEP "is the centerpiece of the statute's education delivery system for disabled children[.]" *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (citation omitted). The IDEA requires that a school system "offer an IEP that is reasonably calculated to enable a [disabled student] to make progress in light of the child's circumstances." *Id.* at 999. Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP.

The IDEA and accompanying regulations provide that once a child is determined to have a disability, a reevaluation is required to determine whether the child continues to present with a disability and that the child shall be assessed in all areas of suspected disability during this reevaluation. 34 CFR 300.304(c)(4). The reevaluation shall occur if the parent requests a reevaluation. 34 CFR 300.303(a)(2). The reevaluation must occur at least every 3 years unless the parent and the public agency agree that a reevaluation is unnecessary. 34 CFR 300.303(b)(2). The reevaluation is comprised of a variety of tools, including, *inter alia:* (1) assessments tailored to assess specific areas of educational need; (2) review of existing data; (3) classroom-based assessment; (4) observations by teachers and related service providers; (5) input from the parents. 34 CFR 300.304(b)(2). Pursuant to 34 CFR 300.502(b)(1), "[a] parent has the right to an independent educational evaluation ["IEE"] at public expense if the parent disagrees with an

evaluation obtained by the public agency."   After the parent requests an IEE, the school system has two choices: "(i) [f]ile a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) [e]nsure an independent educational evaluation is provided at public expense." 34 CFR 300.502(b)(2).  If the hearing officer finds that the evaluation comports with the requirements of the IDEA for an initial evaluation or reevaluation, the parent is not entitled to an independent educational evaluation at public expense.

### B. Factual History

In April 2017, the District of Columbia Superior Court Youth and Family Services Division referred K.B. for a psychoeducation evaluation, which showed overall average cognitive functioning and moderately impaired to average academic functioning.  *See* AR, ECF No. 13, at 51, 63-64.  The evaluator concluded that K.B. had symptoms consistent with ADHD, Combined Type, and K.B. was diagnosed also with an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct and recommended for tutoring and counseling.  *Id.* at 63-64, 66-67.

K.B.'s initial IEP was developed in January 2018, when the student was in fifth grade attending the Children's Guild Public Charter School, its own Local Educational Agency ("LEA") under the IDEA, *id.* at 99, and she was determined eligible for special education services as a student with Multiple Disabilities (Specific Learning Disability/Other Health Impaired).  AR at 89-111.  K.B. began attending DCPS Eliot-Hine Middle School ("Eliot-Hine") for the 2020-2021 school year.  AR at 188.  Elliot-Hine provided virtual instruction that entire school year because of the pandemic.  *Id.* at 660.  In December 2020, K.B.'s IEP team conducted a reevaluation to see if K.B. remained eligible for special education, *id.* at 193, and the team determined that K.B. remained eligible with the disability classification OHI/ADHD.  *Id.* at 201.

K.B. next attended Paul PCS-International High School ("Paul PCS"), which is its own

LEA under the IDEA.  AR at 246.  On January 19, 2022, through counsel, Plaintiff contacted the principal of Eliot-Hine requesting that DCPS fund an IEE.  *Id.* at 284.  The principal responded on January 20, 2022, informing Plaintiff that K.B. was no longer a student at Eliot-Hine.  *Id.* at 286. On January 26, 2022, Paul PCS informed Plaintiff that it would conduct a comprehensive psychological evaluation and a functional behavioral assessment ("FBA") but would not fund an IEE.  *Id.* at 271.

On February 2, 2022, Plaintiff completed an application for K.B. to attend Coolidge High School ("Coolidge"), a DCPS school.  *Id.* at 273-275.  On February 7, 2022, Plaintiff emailed Coolidge requesting that DCPS fund an IEE.  *Id.* at 287.  On February 10, 2022, DCPS issued an authorization letter for Plaintiff to obtain an independent comprehensive psychological evaluation, and DCPS issued a second authorization letter for Plaintiff to obtain an independent speech language evaluation and an independent assistive technology evaluation.  *Id.* at 278, 280.[2]  DCPS convened an IEP meeting on March 16, 2022, and DCPS agreed to conduct an occupational therapy ("OT") assessment and an FBA.  *Id.* at 282.  On June 16, 2022, DCPS issued a third authorization letter, with funding for independent comprehensive psychological, speech language, occupational therapy, and assistive technology testing.  *Id.* at 300.  That June 16, 2022 letter voided the two February 10, 2022 authorization letters.  *Id.*

On February 10, 2022, Plaintiff requested a copy of K.B.'s educational records.  *Id.* at 391. Plaintiff made several requests for records during the period February 2022-July 2022, AR at 394-413, including a motion to compel the records.[3]  On April 7, 2002, DCPS provided the majority of K.B.'s educational records in a zip file.  *Id.* at 307.  DCPS provided K.B.'s fourth quarter service

---

[2] While the second authorization was dated February 10, 2022, the attorney for DCPS acknowledged at the due process hearing that this was not provided to Plaintiff until March 16, 2022, when counsel realized that letter had not been received previously.  AR at 722-723.
[3] This motion was denied as a pre-hearing matter by the IHO.  AR at 8.

trackers and IEP progress reports by June 2022 and enrollment documents in July 2022.   *Id.* at 715, 474.

### 1. Due Process Proceeding

On April 20, 2022, Plaintiff filed an administrative due process complaint alleging that DCPS denied K.B. a FAPE by: (1) failing and refusing to agree to fund an IEE; (2) failing and refusing to conduct an appropriate reevaluation in December 2020; (3) developing an IEP that was based on an inappropriate reevaluation;[4] and (4) failing to provide a complete copy of K.B.'s educational records.  *Id.* at 308-315.  By way of relief, Plaintiff requested an order that DCPS: (1) immediately fund an IEE; (2) convene an IEP meeting to review the IEE, find K.B. eligible for special education, and develop an IEP; (3) order a compensatory education assessment, review the assessment, and incorporate the assessment's results into the IEP; and (4) provide K.B.'s educational records.  AR at 313-314.   An administrative due process hearing was held on July 26, 2022.  *Id.* at 614.

Plaintiff was the only witness presented on her own behalf.  She testified that: (1) she received the February 10, 2022 letter authorizing an independent psychological evaluation but never had K.B. evaluated, *id.* at 679-680; (2) during a March 2022 meeting, DCPS offered to conduct a speech language evaluation, OT evaluation, and an assistive technology evaluation but her attorney rejected DCPS's offer, *id.* at 673-674; and (3) she received the June 16, 2022 letter authorizing her to obtain an independent comprehensive psychological evaluation, speech language evaluation, OT evaluation, and assistive technology evaluation, but Plaintiff never tried to have K.B. evaluated.  *Id.*  at 679-680.  There was no testimony by Plaintiff about K.B.'s educational records.

---

[4] This claim was withdrawn on July 15, 2022.

On behalf of DCPS, Resolution Specialist Alexis Thom was the sole witness, and she testified that her duties include reviewing parental requests for IEEs.  *Id.* at 693-694.  In response to a parental request for an IEE, she issues a letter authorizing funding for various assessments and then waits to receive the assessments from the parents.  AR at 696-697.  IEEs generally include standardized and informal testing, class observations, parental input, and teacher input. *Id.* at 700-701.  An independent psychological assessment usually includes the student's behavioral history and the parent's rating of the student's behavior.  *Id.* at 701.  Ms. Thom testified that she received Plaintiff's request for an IEE in February and issued authorization letters that month for psychological, speech language, and assistive technology assessments.  AR at 704-705.  A third authorization letter was issued in June 2022, and that included an OT assessment in addition to the three other assessments.  *Id.* at 708.  Ms. Thom testified that Plaintiff requested no other assessments, including an FBA, after DCPS issued the June 2022 IEE authorization letter.  *Id.* at 713, 726.  Ms. Thom explained that FBAs are conducted at the school and behavioral intervention plans are created after the FBA.  AR at 727-728.

Regarding educational records, Ms. Thom testified that Ms. Dabney, the LEA representative for Coolidge, provided K.B.'s educational records to Plaintiff in a zip file on April 7, 2022, and Ms. Thom provided K.B.'s fourth quarter service trackers and IEP progress reports sometime between May 13 and June 16, 2022, and K.B.'s enrollment documents on July 19, 2022. *Id.* at 714-716.  Production of the enrollment documents was delayed because hard copies were maintained by the school registrar, who had been on leave.  AR at 716.

Ms. Thom testified further that DCPS student educational records are contained in "SEDS" and "Aspen" databases that do not completely overlap in content, and a "SEDS Index" would not capture a complete list of educational records.  *Id.* at 717-719.  Furthermore, a "SEDS Index" is

not an actual document that can be printed; rather, a document tab in SEDS lists a student's educational records contained in SEDS, but SEDS does not generate a printable list.  *Id.; see also* AR at 729, 731.  Accordingly, a user would need to take multiple screenshots of their computer screen while scrolling the tab in order to create such a list and then separately upload the screenshots into the SEDS database.  *Id.* at 717-719.

### 2. HOD

IHO Coles Ruff, Esq. issued his HOD on August 29, 2022, and an amended version of the same (correcting typographical errors) on August 31, 2022.  AR at 4-24.[5]  The IHO concluded that: (1) DCPS provided the requested IEP without unnecessary delay; (2) Plaintiff failed to meet her burden on the inappropriateness of the December 2020 evaluation; and (3) Plaintiff established a procedural violation regarding the provision of K.B.'s educational records, with reference to the list of documents available in SEDS, but that procedural violation did not constitute a denial of FAPE.  AR at 8-9, 11.  The IHO ordered DCPS to provide to Plaintiff the complete list of documents pertaining to K.B.'s educational history, which were available through SEDS (SEDS Documents Index).  AR at 9, 17.

Pending before this Court are the Plaintiff's [15] Motion for Summary Judgment, requesting that this Court reverse the IHO's HOD, and Defendant's [16] Cross Motion for Summary Judgment, asking this Court to affirm the HOD.  The parties' respective cross motions are fully briefed and ripe for this Court's review.

### II. LEGAL STANDARD

"Although motions for review of an HOD are called motions for summary judgment, the Court does not follow 'a true summary judgment procedure.'"  *Middleton v. District of Columbia*,

---

[5] The Court references that amended version herein.

312 F. Supp. 3d 113, 128 (D.D.C. 2018) (quoting *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012)); *cf.* Fed. R. Civ. P. 56.  Rather, in a civil action brought to challenge a Hearing Officer's determination pursuant to the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the court may receive." *D.R. v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).  When neither party has requested that the court hear additional evidence, the motion for summary judgment is "the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997); *M G. v. District of Columbia,* 246 F. Supp. 3d 1, 8 (D.D.C.  2017) (citations omitted); *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C. 2005) (same).

The party challenging the underlying HOD bears "the burden of persuading the [reviewing] court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). A court reviewing an administrative IDEA determination "shall grant such relief as the court determines is appropriate," based upon "a preponderance of the evidence."  20 U.S.C. § 1415(i)(2)(C)(iii); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 205–06 (1982).  Courts, however, must refrain from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206.  Accordingly, "[c]ourts sitting on an IDEA appeal do not have unfettered review but must . . . give due weight to the administrative proceedings and afford some deference to the expertise of the [independent hearing officer] and school officials responsible for the child's education." *Gill v. District of Columbia*, 751 F. Supp. 2d 104, 108-109 (D.D.C. 2010) (citing *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993) (internal quotation marks omitted)). As a general matter, factual findings from the administrative proceeding are to

be considered *prima facie* correct. *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005). Furthermore, "a hearing officer's findings 'based on credibility determinations of live witness testimony' are given 'particular deference' where there is no supplementation of the record." *R.D. ex rel. McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 76–77 (D.D.C. 2014) (citation omitted). Nonetheless, "a hearing decision 'without reasoned and specific findings deserves little deference.'" *Reid ex rel. Reid v. District of Columbia,* 401 F. 3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 931 F.2d 84, 87 (D.C. Cir. 1991) (internal quotation marks omitted)). "[A] court upsetting [a hearing] officer's decision must . . . explain its basis for doing so." *McKenzie*, 862 F.2d at 86.

### III. ANALYSIS

#### A. Did DCPS unnecessarily delay its response to Plaintiff's request for an IEE?

If the parent requests an IEE, the public agency "must, without unnecessary delay, either file a due process complaint to request a hearing to show that its evaluation is appropriate or ensure that an IEE is provided at public expense." 34 C.F.R. § 300.502(b)(2)(i), (ii). Plaintiff contends that "Defendant acted with unnecessary delay in responding to Plaintiff's request for funding for an Independent Educational Evaluation[.]" Pl's P&A, ECF No. 15-1, at 9. In this case, the IHO found that "authorization for independent assessments that DCPS provided Petitioner in response to her counsel's request were provided promptly without unnecessary delay and that those assessments satisfied the requirements pursuant to 34 CFR 300.502." HOD, ECF No. 13-1, at 14.

Plaintiff argues that "the Hearing Officer provided no rational or factual basis for [his] conclusion," but this argument misstates the record in this case and is non-persuasive. The IHO first discussed "unnecessary delay" and determined that it is an inquiry addressed case-by-case.

HOD, ECF No. 13-1, at 13 (citing *J.P. ex rel., E.P. v. Ripon United School Dist.,* 2009 WL 1034993 (E.D. Cal. 2009)) (noting that the facts of the case are critical).  The IHO next looked for guidance in the IDEA and its implementing regulations but found none.  *Hill v. District of Columbia*, No. 14-CV-1893 (GMH), 2016 WL 4506972, at *19 (D.D.C. Aug. 26, 2016) (noting no guidance as to "unnecessary delay" in the IDEA and its regulations).  The IHO looked then for case law to interpret the IDEA's requirement of "prompt resolution of disputes involving the educational placement of learning-disabled children."  HOD, ECF No. 13-1, at 13.  The IHO noted that undue delay that constitutes a procedural violation of the IDEA must have "affected the student's substantive rights" to be a denial of FAPE.  *Smith v. District of Columbia*, Civil Action No. 08-2216, 2010 W.L. 4861757, at *4 (D.D.C. Nov. 30, 2010).  The IHO noted that "[a] delay does not affect substantive rights if the student's education would not have been different had there been no delay."  HOD, ECF No. 13-1, at 13 (citing *D.R. ex rel Robinson v. Gov't of Dist. of Columbia*, 637 F. Supp. 2d 11, 18 (D.D.C. 2009)).  In contrast, "[a] delay of more than 2-3 months is likely fatal to the [school] district's case, although the exact length will depend on the circumstances rather than being a bright-line test."   HOD, ECF No. 13-1, at 14 (citing *Hill v. District of Columbia*, No. 14-cv-1893 (GMH), 2016 WL 4506972, at *19 (D.D.C. Aug. 26, 2016)).

In this case, Plaintiff contends that the request for an IEE was initially made on January 19, 2022, and again on February [7], 2022, but DCPS did not make its position known until February 10, 2022, which is 22 days after the initial request and "constitute[s] unnecessary delay."  Pl's P&A, ECF No. 15-1, at 9-10.  Plaintiff does not cite to any case law establishing that a 22-day period (if even applicable here since Plaintiff's initial request was directed to Eliot-Hine when K.B. was no longer a student there) constitutes "unnecessary delay."

11

On February 7, 2022, Plaintiff emailed Coolidge – where K.B. was enrolled as of February 2, 2022, AR at 273-275 – to request that DCPS fund an IEE.  AR at 287.  Plaintiff's request did not identify any specific testing or assessments for K.B.  *Id.*  Three days later, DCPS responded and issued an authorization letter for Plaintiff to obtain an independent comprehensive psychological evaluation, and DCPS issued also a second letter for Plaintiff to obtain independent speech language and assistive technology assessments.  *Id.* at 278, 280.  Plaintiff acknowledged receipt of these two February 2022 letters (although the second letter was not received by Plaintiff until March 16, 2022), and she admitted she never used them to have K.B. independently evaluated.  *Id.* at 679-680.

DCPS convened an IEP meeting in March 2022, and at that time offered to conduct an OT assessment and an FBA, both of which needed to be done at Coolidge.  AR at 282.  These assessments were not completed because K.B. became ill shortly after enrolling at Coolidge in February 2022, and the student did not attend school in March, April, or May 2022.  *Id.* at 671-672.  In June 2022, DCPS issued a third authorization letter in June 2022, which permitted Plaintiff to obtain an independent OT assessment in addition to the comprehensive psychological, speech language, and assistive technology testing.  *Id.* at 300.  Plaintiff indicated that she received the June 2022 authorization letter but "took no action to obtain any of the assessments that DCPS has already authorized."  HOD, ECF No. 13-1, at 14; AR at 679-680.  By way of explanation, Plaintiff asserts that she was "advocat[ing] for a complete IEE, not just funding for several assessments."  Pl.'s Reply, ECF No. 20, at 2.  Ms. Thom testified that there were no additional requests for assessments made by Plaintiff after the issuance of the June 2022 letter.  AR at 713, 726.

After examining the facts of this case, the IHO concluded that "authorization for

independent assessments that DCPS provided Petitioner . . . were provided promptly without unnecessary delay and that those assessments satisfied the requirements pursuant to 34 C.F.R. 300.602." HOD, ECF No. 13-1, at 14. Furthermore, the IHO noted that he "did not find the case law cited [by Petitioner, in support of her position that the requested IEE was not provided] to be on point." *Id.* Finally, he stated that "the other actions that Petitioner asserts are to be taken in an IEE are actions DCPS cannot and will not take, including conducting a review of the assessment data, until Petitioner has taken action to obtain the independent assessments that have already been authorized." *Id.* Accordingly, the IHO concluded that Petitioner did not sustain her burden of proof.

The undersigned finds that the IHO's conclusion that DCPS did not act with unreasonable delay in responding to the Plaintiff's IEE request and that K.B. was not denied a FAPE is supported by the factual record and applicable law. DCPS responded promptly to Plaintiff's request and subsequently attempted to collaborate with the Plaintiff on the parameters of the IEE, even during the time that K.B. was out of school for a three-month period. And Plaintiff admittedly took no actions to effectuate any of the authorized testing for K.B. Accordingly, the HOD is upheld regarding this issue.

**B. Did DCPS refuse to authorize a sufficient IEE?**

Pursuant to 34 C.F.R. §300.303(a), "a [local education] agency shall ensure that a reevaluation of each child with a disability is conducted . . . if the child's parent or teacher requests a reevaluation" and that the reevaluation must be conducted at least once every three years. Pursuant to 34 C.F.R. § 300.304(c), a school district must ensure that a student has been appropriately evaluated in all areas of suspected disability. The IHO considered these regulations and looked also at regulations governing the evaluation process, including what

information needs to be gathered to determine the content of the IEP and what needs to be done during an initial evaluation or reevaluation.  *See* HOD, ECF No. 13-1, at 15.  The evaluators shall use "a variety of assessment tools and strategies [to] gather relevant functional and developmental information about the child, including information provided by the parent, and information related to enabling the child to be involved in and progress in the general curriculum[.]"  D.C. Mun. Regs. Title 5E § 30005.9(b). All areas "related to the suspected disability" should be assessed, D.C. Mun. Regs Title 5E § 30005.9(g), and the evaluations must be "sufficiently comprehensive to identify all of the child's special education and services needs."  D.C. Mun. Regs Title 5E § 30005.9(h).

   The IHO then noted that DCPS did a triennial evaluation in this case, in December 2020, while K.B. was enrolled at Eliot-Hine, AR at 193, and he concluded that "[t]here was no evidence presented including testimony, that sufficiently supports a finding that DCPS's reevaluation was inappropriate," although he did note that Petitioner opined that there was little data available to the school because of the virtual learning due to the pandemic.  HOD, ECF No. 13-1, at 15.  The IEP team reviewed K.B.'s classroom-based assessments, first semester IEP progress report, a September 2020 IReady beginning of the year assessment, a December 2019 Reading Inventory Assessment, classwork samples, previous IEPs, and parental input.  AR at 195-198, 205.  DCPS points out that while Plaintiff argues that the reevaluation was incomplete and "lists several items that were not included" therein, Pl's P&A, ECF No. 15-1, at 18-19, that list also "includes items that *were* considered by the IEP team" such as classroom-based assessments in math and reading, work samples in written expression, teacher observations, and current IEP progress reports.  Def.'s CMSJ, ECF No. 16, at 20-21.  Looking at the record in this case, there is no indication that the IEP team did

14

not analyze existing data during the reevaluation.  And while, for example, Plaintiff points to the failure to analyze vision or hearing screening, there is no suggestion that analysis of this data would have affected the determination of special education for K.B. (insofar as there is no indication of any issue with vision or hearing either in the record or alleged by Plaintiff).

The IEP team determined that K.B. remained eligible for special education under the classification Other Health Impairment/ADHD.  *Id.* at 201.  The IHO looked at the data that was considered during the reevaluation and concluded that such reevaluation was "appropriate and sufficient to determine Student's continued eligibility for special education services."  HOD, ECF No. 13-1, at 16.  DCPS notes that [t]here is no evidence that Plaintiff requested any additional assessments after the team made this determination."  Def.'s CSMJ, ECF No. 16, at 20; *see* AR at 9, 16; *see also* 34 C.F.R. § 300.305(d).  "Nor does Plaintiff identify any evidence to rebut the hearing officer's finding that she did not request for the team to conduct additional assessments in these areas, or any areas, once the IEP team reviewed existing data."  Def.'s CMSJ, ECF No. 16, at 21, *see* AR at 9 (Finding of Fact No. 6).  Accordingly, upon review of the HOD and the record in this case, the Court concludes that the IHO's decision on this issue should be upheld as it is supported by substantial record evidence and is in accordance with the law.

Furthermore, while Plaintiff asserts that DCPS should bear the burden of proving the appropriateness of the reevaluation, Pl.'s P&A, ECF No. 15-1, at 17-18; Pl.'s Reply, ECF No. 20, at 4, the IDEA only requires an LEA to justify the appropriateness of its own evaluation via its due process complaint if it refuses to authorize an IEE, and that was not the situation here.  *See* 34 C.F.R. §502(b)(2)(i); HOD, ECF No. 13-1, at 16 (where the IHO asserted that "DCPS is only required to defend the validity of its evaluation when it has failed

to timely respond to a requested IEE pursuant to 34 CFR 300.502" and noted that was not the case here).  It is Plaintiff who bears the burden of proof on this claim because she challenged the appropriateness of the reevaluation.  *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); D.C. Code Section 38-2571.03(6).  Accordingly, the Court upholds also the IHO's determination that Plaintiff failed to sustain her burden of proof on this issue.

**C. Was DCPS's failure to provide a "SEDS document Index" a substantive denial of FAPE?**

In this case, Plaintiff requested a copy of K.B.'s educational records on February 10, 2022. AR at 391.  On April 7, 2022, DCPS provided the majority of K.B.'s educational records in a zip file.  *Id.* at 307.  In June 2022, DCPS provided K.B.'s fourth quarter service trackers and IPE progress reports (which were developed after April 7, 2022), and in July 2022, K.B.'s enrollment documents were provided.  *Id.* at 715, 474.  Ms. Thom testified that the delay in providing enrollment documents was attributable to the registrar being on leave.  AR at 716.  During the hearing, Defendant acknowledged that the "SEDS Document Index" had not been provided to Plaintiff, and Plaintiff agreed that this was the only educational record that had not been provided. AR at 626, 725, 730-731.

IDEA regulations provide parents and legal representatives an opportunity to inspect and review all education records with respect to the identification, evaluation, and educational placement of the student and provision of FAPE to a student.  *See* 34 C.F.R. §300.501(a); *Friendship Edison Public Charter School Collegiate Campus v. Murphy*, Civil Action No. 05-2109 (RMU), 2006 WL 2711524, at *4 (D.D.C. 2006).  DCPS must permit parents to inspect and review any educational records relating to their children that are collected, maintained, or used by the agency.  *See* 34 C.F.R. §300.613(a).  Pursuant to the District of Columbia Municipal

Regulations ("DCMR"), DCPS must honor the records request as soon as possible, but in no case more than 45 calendar days, 5E DCMR §2600.6, and failure to timely comply with a parent's request to inspect educational records is a procedural violation of the IDEA. *N.P. v. E. Orange Bd. of Educ.*, No. CIV. 06-5130 DRD, 2011 WL 463037, at *7 (D.N.J. Feb. 3, 2011).

If a procedural violation is alleged, a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decisionmaking process on provision of FAPE, or caused the child to be deprived of educational benefits. An IDEA claim is "viable only if [the] procedural violations affected the student's substantive rights." *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006).

The IHO found that DCPS provided Plaintiff's counsel with K.B.'s educational records apart from a document sometimes referred to as a "SEDS document index." HOD, ECF No. 13-1, at 17. The IHO agreed that Plaintiff made a "legitimate argument that such a document has been provided by DCPS in other instances." *Id.* As such, the IHO directed that DCPS provide Plaintiff with this list so that she could be sure she had been provided all educational records. The IHO did not, however, find that non-production of this list was anything other than a procedural violation. The IHO found that "there was insufficient evidence that DCPS['s] [failure to provide a SEDS index] significantly impeded Petitioner's opportunity to participate in the decision-making process regarding the provision of a FAPE to Student or caused Student a deprivation of educational benefits." HOD, ECF No. 13-1, at 17. Accordingly, the IHO concluded that while Petitioner sustained the burden of persuasion on this issue, there was no denial of FAPE. *Id.* at 16.

The Court has reviewed the argument proffered by Plaintiff in support of her contention that

non-provision of the SEDS index resulted in a substantive violation.  *See generally* Pl.'s P&A, ECF No. 15-1, at 23-25.  This Court finds that while Plaintiff makes conclusory statements about procedural violations rising to the level of substantive violations, and statements regarding the general importance of the SEDS index, Plaintiff does not identify any way in which DCPS's actions deprived K.B. of educational rights or impeded Plaintiff from participating in the educational process attributable to the SEDS index.  Nor was there any testimony by Plaintiff during her direct examination regarding K.B.'s educational records.   Accordingly, Plaintiff has failed to demonstrate the DCPS's omission of the SEDS index from the records produced affected K.B.'s education in any way.  *Lattisaw v. District of Columbia*, No. 1:22-CV-510, 2023 WL 3719814, at *3 (D.D.C. May 30, 2023) (citations omitted).  Moreover, Plaintiff has not carried the burden of demonstrating a substantive violation, and as such, the Court upholds the IHO's findings on this issue, which are supported by the record evidence and statutory authority.

### D. Did DCPS violate the HOD?

In the August 29, 2022 HOD, the IHO directed that "DCPS, within ten (10) business days of the issuance of this order [ ] provide Petitioner the list of documents for Student available through SEDS, sometimes referred to as the SEDS document index."  HOD, ECF No. 13-1, at 17.  Plaintiff acknowledges that "[o]n or about September 9, 2022, DCPS provided Plaintiff with a list of documents that DCPS had developed" but argues that it was not a copy of the SEDS document index.  Pl.'s P & A, ECF No. 15-1, at 26 (referencing a comparison of a SEDS document with what was provided).  DCPS labels this claim as "baseless" and explains that:

> As explained by [Ms.] Thom, the SEDS database cannot generate a "SEDS Document Index." ¶¶ 8-9.  And instead of saving or printing multiple screenshots of the documents viewable in the system, which could provide an incomplete, and possibly inaccurate accounting of the documents that are included in the student's file, Thom manually reviewed [the] student's entire profile in SEDS and then created a document identifying and listing every document maintained in SEDS for K.B. during his time with DCPS, which she

provided to Plaintiff's counsel.  ¶¶ 10-13.

Def.'s CMSJ, ECF No. 16, at 23-24.  DCPS asserts, and this Court agrees, that this document produced by DCPS satisfies the directive in the HOD, which ordered the provision of a "list of documents for student available through SEDS, sometimes referred to as the SEDS document index."  Accordingly, this claim by Plaintiff is denied.[6]

### IV. CONCLUSION

The Court has reviewed the four claims set forth by Plaintiff, which challenge the IHO's findings in his HOD.  As explained herein, regarding each claim, the Court has found that the IHO made specific and reasoned findings that were based on the factual record and consistent with relevant legal authority.  Accordingly, Plaintiff's Motion for Summary Judgment shall be denied, and Defendant's Cross Motion for Summary Judgment shall be granted.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

---

[6] DCPS notes in its CMSJ, ECF No. 16, at 23, that Plaintiff seeks enforcement of the HOD, but 20 U.S.C. §1415(i)(2)(A) "does not provide a cause of action to enforce school district compliance with a hearing officer's decision."  *B.D. v. District of Columbia*, 817 F.3d 792, 803 (D.C. Cir. 2016).  Because the Court finds that Plaintiff's claim is without merit, the Court need not address whether Plaintiff has adequately raised this claim in her Complaint, pursuant to her mention of 42 U.S.C. §1983.